UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBORAH R.,

                              Plaintiff,                    **DECISION**
                                                           **and**
                    v.                                     **ORDER**

KILOLO KIJAKAZI,[1] Commissioner of                        **20-CV-1235F**
  Social Security,                                         (**consent**)

                              Defendant.
_____


APPEARANCES:         LAW OFFICES OF KENNETH R. HILLER, PLLC
                     Attorneys for Plaintiff
                     KENNETH R. HILLER, and
                     SAMANTHA J. VENTURA, of Counsel
                     6000 North Bailey Avenue, Suite 1A
                     Amherst, New York  14226

                     TRINI E. ROSS
                     UNITED STATES ATTORNEY
                     Attorney for Defendant
                     Federal Centre
                     138 Delaware Avenue
                     Buffalo, New York  14202
                              and
                     DANIELLA M. CALENZO
                     Special Assistant United States Attorney, of Counsel
                     Social Security Administration
                     Office of General Counsel
                     26 Federal Plaza, Room 3904
                     New York, New York  12078

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On October 7, 2021, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned.  (Dkt. 12).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on April 2, 2021 (Dkt. 10), and by Defendant on August 31, 2021 (Dkt. 11).

## BACKGROUND

Plaintiff Deborah R. ("Plaintiff"), brings this action under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA") on March 11, 2016, for Social Security Disability Income ("SSDI") under Title II of the Act ("disability benefits").  Plaintiff alleges she became disabled on August 30, 2010, based on a neck injury, severe anxiety disorder, bone-on-bone arthritis in the right wrist, and hypertension.  AR[2] at 1064, 1083, 1096.  Plaintiff's application initially was denied on July 27, 2016.  AR at 994-1010.  On January 25, 2019, Plaintiff amended her disability benefits claim to seek disability benefits for the closed period of September 1, 2014 to November 1, 2016.  AR at 1073. At Plaintiff's timely request, AR at 1013-14, on February 27, 2019, an administrative hearing was held via videoconference before Administrative Law Judge ("ALJ") Anthony Dziepak ("the ALJ"), located in Lawrence, Massachusetts.  AR at 950-93 ("administrative hearing").  Appearing and testifying at the administrative hearing in

---

[2] References to "AR" are to the pages of the Administrative Record electronically filed by Defendant on February 1, 2021 in three parts (Dkts. 6, 7 and 8).

Buffalo, New York, were Plaintiff, then represented by Nicholas DiVirgilio, Esq., and vocational expert Whitney Eng ("the VE").

On July 10, 2019, the ALJ issued a decision denying Plaintiff's claims, AR at 12-30 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 1061-63.  On July 8, 2020, the Appeals Council adopted the ALJ's Decision that Plaintiff was not disabled through November 1, 2016, the date of the amended closed period, AR at 1-6, thus rendering the ALJ's Decision the Commissioner's final decision.  On September 8, 2020, Plaintiff commenced the instant action seeking review of the ALJ's Decision denying Plaintiff disability benefits.

On April 2, 2021, Plaintiff moved for judgment on the pleadings (Dkt. 10) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 10-1) ("Plaintiff's Memorandum").  On August 31, 2021, Defendant moved for judgment on the pleadings (Dkt. 11) ("Defendant's Motion"), attaching Commissioner's Brief in Support of the Commissioner's Cross Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 (Dkt. 11-1) ("Defendant's Memorandum").  Filed on October 12, 2021, was Plaintiff's Reply to Commissioner's Memorandum in Support (Dkt. 13) ("Plaintiff's Reply"), advising Plaintiff "deems no reply necessary and relies on the original arguments and authority contained in her primary brief."  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

**FACTS**[3]

Plaintiff Deborah R. ("Plaintiff"), born February 4, 1956, was 58 years old as of her amended alleged disability onset date ("DOD") of September 1, 2014, and 60 years old as of November 1, 2016, the last date of Plaintiff's alleged closed disability period. AR at 63, 1083.  Plaintiff lives in a house with her husband and grandson of whom Plaintiff and her husband have custody, and, until recently, an adult disabled daughter, AR at 953-54, 1132, and has other adult children who do not live with her.  AR at 42, 1446.

Plaintiff graduated high school in 1974, where she attended regular classes, and obtained her real estate salesperson license in 2003.  AR at 1098, 1446.  Plaintiff previously worked as a bus driver and as a real estate agent.  AR at 1086, 1098. Plaintiff left the bus driver job on August 30, 2010 after sustaining an on-the-job injury to her cervical spine for which Plaintiff received Worker's Compensation benefits for a temporary partial disability from August 30, 2010 through August 20, 2014, a temporary total disability from November 18, 2013 until December 18, 2013, and a permanent partial disability from August 21, 2014 until October 15, 2016, following which Plaintiff received a lump sum payment in settlement of her claim on February 19, 2018.  AR at 956-57, 964, 967, 1206, 1678.

Plaintiff has a driver's license, drives, and can go out on her own when her pain and anxiety are not too bad.  AR at 1135, 1446.  Plaintiff describes her activities of daily living as eating meals, setting the table, washing dishes, loading the dishwasher, reading, watching television, and driving.  AR at 1132.  Plaintiff talks on the telephone

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

and visits with friends several times a week.  AR at 1136.  Plaintiff and her grandson

take care of the family's pet dog.  AR at 1133.  Plaintiff tends to most of her daily

personal care although pain raising her arms, turning her head, and with her wrists

causes difficulty.  AR at 1133-34.  Plaintiff also does household chores and yard work,

again with some difficulty posed by her impairments, AR at 1134-35, some cooking,

generally frozen foods, and shops for groceries but needs help carrying them.  AR at

1134-35.  Plaintiff remains capable of paying bills and handling household finances.  AR

at 1136.

It is undisputed that Plaintiff suffers from a cervical spine disorder stemming from

the 2010 work injury, as well as anxiety.  Plaintiff receives primary care from O'Connor

Medical Group, LLP ("OMG") where her primary care physician has been Terence

O'Connor, M.D. ("Dr. O'Connor") since September 1, 2013, and commenced mental

health treatment with Russell Shefrin, Ph.D. ("Dr. Shefrin"), on August 31, 2015.  AR at

1450.  Relative to her neck injury, Plaintiff also treated with orthopedic surgeon Gregory

B. Shankman, M.D. ("Dr. Shankman"), occupational medicine specialist Mark Costanza,

M.D. ("Dr. Costanza"), and at OMG with Lauren M. Kuwik, M.D. ("Dr. Kuwik"), received

chiropractic care from Kenneth J. Beck, D.C. ("Dr. Beck"), and attended physical

therapy with George F. Harb, M.S., P.T. ("P.T. Harb").  In connection with her disability

benefits application, Plaintiff underwent a psychiatric evaluation by consultative

psychologist Susan Santarpia, Ph.D. ("Dr. Santarpia") on July 13, 2016, AR at 1446-49,

and on July 22, 2016, State Agency psychological consultant A. Dipeolu, Ph.D. ("Dr.

Dipeolu"), reviewed Plaintiff's medical record.  AR at 999-1000.

## DISCUSSION

**1.     Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability

benefits when she is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§

416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's

determination that a claimant is not disabled if the factual findings are not supported by

substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g),

1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In

reviewing a final decision of the SSA, a district court "is limited to determining whether

the SSA's conclusions were supported by substantial evidence in the record and were

based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012) (internal quotation marks and citation omitted).  "Substantial evidence is more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's

function to make a *de novo* determination as to whether the claimant is disabled; rather,

"the reviewing court is required to examine the entire record, including contradictory

evidence and evidence from which conflicting inferences can be drawn" to determine

whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has

instructed . . . that the factual findings of the Secretary,[4] if supported by substantial

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of
the Secretary of Health and Human Services in Social Security cases was transferred to the
Commissioner of Social Security, effective March 31, 1995.

evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'"  *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

2.      **Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant

is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

3.    **Analysis of Plaintiff's Arguments**

In the instant case, the ALJ found Plaintiff meets the insured status requirements for SSDI though March 31, 2021, AR at 17, did not engage in substantial gainful activity ("SGA") for the alleged closed period, *i.e.*, between September 1, 2014 and November 1, 2016, *id*., and suffers from the severe impairment of cervical spine disorder, *id*. at 17, but that other conditions alleged by Plaintiff are not severe impairments, including right wrist osteoarthritis, hypertension, hyperlipidemia, hypercholesterolemia, tachycardia, atrial contraction (generally benign condition causing palpitations and irregular pulse), gastroesophageal reflux disease, acute sinusitis/allergic rhinitis, kidney stones, lower left extremity cellulitis, abdominal wall cellulitis, and obesity, *id*. at 18, and that Plaintiff's medically determinable mental impairment of anxiety disorder is also non-severe.  *Id*. at 18-21.  The ALJ also found Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at 21.  Despite her impairments, the ALJ found Plaintiff retains the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that Plaintiff can occasionally lift or carry 20 lbs., and frequently lift or carry 10 lbs. with the right upper extremity used only in an assistive manner, no climbing ladders, ropes, or scaffolds, no crawling, no operation of vibrating tools or working with heavy, moving machinery, and occasional overhead reaching with the right upper extremity.  *Id*. at 21-25.  The ALJ further found Plaintiff is capable of performing her PRW as a real estate agent, but not as a bus driver.  *Id*. at 25.  Accordingly, the ALJ found Plaintiff was not disabled, as defined in the Act, through the closed period of September 1, 2014 to November 1, 2016.  *Id*.

In support of judgment on the pleadings, Plaintiff argues the ALJ did not properly evaluate the opinion of Dr. O'Connor, Plaintiff's treating physician, Plaintiff's Memorandum at 13-17, the ALJ's RFC determination is not supported by substantial opinion, *id*. at 17-20, and the ALJ failed to properly evaluate Plaintiff's anxiety disorder. *Id*. at 20-23.  In opposition, Defendant argues the ALJ reasonably found Plaintiff's anxiety disorder was not a severe impairment, Defendant's Memorandum at 5-15, the ALJ's RFC determination that Plaintiff is capable of performing a limited range of light work is supported by substantial evidence, *id*. at 15-24, despite the ALJ's according only limited weight to the opinion of Dr. O'Connor, Plaintiff's treating physician.  *Id*. at 24-32.  In reply, Plaintiff relies on the arguments made in Plaintiff's Memorandum.  Plaintiff's Reply at 1.  There is no merit to Plaintiff's arguments.

With regard to Plaintiff's argument that the ALJ did not properly evaluate Plaintiff's anxiety, finding anxiety was not a severe impairment and failing to account for any restrictions posed by anxiety in formulating Plaintiff's RFC, Plaintiff's Memorandum at 23, a plain and careful review of the Administrative Record shows no error by the ALJ.  Rather, a plain review of the ALJ's Decision establishes the ALJ did not err in finding Plaintiff's anxiety is not severe and posed no restrictions such that the ALJ was not required to address Plaintiff's non-severe mental impairment in formulating Plaintiff's RFC.  *See*, *c.f.*, *Parker-Grose v. Astrue*, 462 Fed.Appx. 16, 18 (2d Cir. 2012) (holding the ALJ erred in failing to take into account in formulating the plaintiff's RFC additional restrictions posed by the plaintiff's mild mental impairment).  In particular, in determining Plaintiff's anxiety was not severe, the ALJ observed that the medical "evidence of record reflected only mild sporadic anxiety symptoms throughout the disability period."  AR at

18 (citing AR at 1311 (Dr. O'Connor reporting on March 31, 2015, that Plaintiff complained of "intermittent episodes of anxiety throughout the week" which were attributed to "continued stressors in her life especially now that her husband is ill"); AR at 1345 (Dr. O'Connor reporting on June 2, 2016, Plaintiff "still reports intermittent episodes of anxiety throughout the week" and "continued stressors in her life especially regarding her ill husband"); and AR at 1463 (Dr. O'Connor reporting same on October 31, 2016)).  Not only are these complaints of anxiety self-reported by Plaintiff which, in the absence of corroborating medical evidence, cannot support a disability finding, *Mauro v. Comm'r of Soc. Sec. Admin.*, 746 Fed.Appx. 83, 84 (2d Cir. 2019) ("subjective complaints alone are not a basis for an award of disability insurance benefits in the absence of corroborating objective medical evidence"), but "deficits in mental health brought upon by situational stress are not necessarily disabling."  *Percy T. v. Comm'r of Soc. Sec.*, 2021 WL 2155112, at * 4 (W.D.N.Y. May 27, 2021) (citing *Swiantek v. Comm'r of Soc. Sec.*, 588 Fed.Appx. 82, 83-84 (2d Cir. 2015) (medical evidence showing Plaintiff engaged in "attention seeking" and made "situational threats" did not support disability based on bipolar disorder and attention deficit disorder); *Denea v. Comm'r of Soc. Sec.*, 2020 WL 994672, at * 6 (W.D.N.Y. Mar. 2, 2020) ("[D]eficits in mental health brought upon by situational stresses are not necessarily disabling.")).  *See also Gonzalez v. Comm'r of Soc. Sec.*, 2010 WL 55933, at *5 (N.D.N.Y. Jan. 5, 2010) (holding substantial evidence supported the ALJ's finding that it was the plaintiff's "situational periods of stress arising from problems with her children, her extended family, and financial difficulties, rather than any underlying psychopathology" that interfered with the plaintiff's ability to work).  The ALJ also considered that "treatment

notes reflected little to no objective mental health signs," but, rather, that Plaintiff "had a normal mood and affect," was "well groomed" and oriented in all three spheres.  AR at 18 (citing AR at 1256, 1302, 1313, 1326, 1346, and 1586).  The ALJ took further note that Plaintiff was able to work as a real estate agent during the requested closed period, albeit not at the threshold SGA level, a job "which involved interacting with clients and other real estate agents, presenting properties, taking clients to properties, and finishing real estate paper work."  *Id*. at 19.

The ALJ, in determining Plaintiff's anxiety is not a severe impairment, also specifically considered whether the medical evidence of record showed Plaintiff with at least one extreme, or two marked limitations in the four areas of functioning denominated under paragraph B relevant to listing 12.06 (anxiety disorders) ("paragraph B criteria").  AR at 19-21.  The so-called "paragraph B" criteria are four areas of mental functioning set forth in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, Appx. 1, used to evaluate mental disorders, and include (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.   Here, the ALJ, relying on Plaintiff's own "Function Report – Adult," AR at 19-21 (referencing AR at 1132-39), determined Plaintiff had a mild limitation in understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, and adapting or managing oneself, but no limitation in interacting with others, concluding Plaintiff's anxiety posed no more "than a minimal limitation in the claimant's ability to do basic work activities" and, thus, is non-severe.  *Id*.  The ALJ particularly considered that Plaintiff reported she did not need special help or reminders to care for her personal needs and grooming or

taking medications, can pay bills, count change and handle a savings account, reads and watches television daily, can follow spoken and written instructions, spends time socializing with others in person and on the telephone, does not have difficulty interacting with family, friends, or authority figures and relates adequately with others, is able to prepare food on a daily basis, wash dishes, load a dishwasher, dust, do laundry, and shop for groceries and necessities, AR at 19-20 (citing AR at 1132-39), and also engaged in work activity as a real estate agent which required Plaintiff to interact with others and adapt and manage herself.  *Id*. at 20.  This is consistent with other evidence in the record, including the psychiatric evaluation by Dr. Santarpia.

In particular, the ALJ not only considered, but also afforded "great weight" to Dr. Santarpia's psychiatric evaluation and medical source statement completed after examining Plaintiff on July 13, 2016.  AR at 1446-49.  Dr. Santarpia noted Plaintiff drove herself 27 miles from her home to the appointment, AR at 1446, and Plaintiff reported first experiencing "fluctuating dysphoric mood and crying spells" in her mid-30s, and that "her depression is much less pronounced than her anxiety."  *Id*. at 1447.  Plaintiff attributed her anxiety to having a disabled husband and daughter, financial difficulties, and not being able to engage in gardening which previously alleviated Plaintiff's stress. *Id*.  Plaintiff reported medication and counseling helped control her anxiety symptoms and denied panic attacks.  *Id*.  Dr. Santarpia's mental status examination showed Plaintiff with a cooperative demeanor and responded to questions, adequate manner of relating and overall presentation, *id*., unremarkable and appropriate appearance, speech, thought processes, and affect, euthymic (without disturbances) mood, clear sensorium, oriented in all three spheres (person, place, and time), intact attention and

concentration, and recent and remote memory skills, and cognitive functioning was estimated to be in the average range of ability with general fund of information appropriate to experience, with fair insight and judgment. *Id.* at 1448. With regard to mode of living, Dr. Santarpia found Plaintiff able to dress, bathe and groom herself, could do light cooking, cleaning, laundry, and shopping, was able to manage her own money, drove, socialized with friends and family, hobbies and interests included reading and, previously, gardening, and Plaintiff spends her days watching television, listening to the radio, reading, and spending time with her husband, daughter, and two grandsons. *Id.* Dr. Santarpia concluded Plaintiff is able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits, *id.* at 1448-49, such that Plaintiff's psychiatric problems, diagnosed as generalized anxiety disorder, were not significant enough to interfere with Plaintiff's ability to function on a daily basis. *Id.* at 1449. Significantly, the ALJ is permitted to rely on the opinion of a consultative examiner provided the opinion is supported by and consistent with other evidence in the record. *See Camille v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016) (consultative physician's report may constitute substantial evidence). Further, the report of a consultative psychologist may constitute substantial evidence. *Petrie v. Astrue*, 412 Fed.Appx. 401, 405-06 (2d Cir. 2011).

The ALJ also gave partial weight to the opinion of State Agency psychological consultant Dr. Dipeolu who opined Plaintiff had no limitations in any mental functioning

category, yet found Plaintiff with a severe anxiety disorder, which the ALJ found unsupported by the evidence in the record.  AR at 19.  The ALJ further gave little weight to the July 21, 2016 statement of Dr. Shefrin who opined Plaintiff's anxiety significantly negatively affects Plaintiff's ability to function in a typical, full-time competitive work place, observing Dr. Shefrin reported he only met with Plaintiff six times between August 31, 2015, and March 28, 2016, and admitted he "cannot give [ ] an in-depth assessment of [Plaintiff's] ability to perform work in a competitive work place."  AR at 1450-51.  Moreover, the ALJ considered that Plaintiff, despite her asserted anxiety, worked for a time as a real estate agent during the closed period for which Plaintiff seeks disability benefits, AR at 20, a job which Plaintiff testified she left in part because it was not "lucrative for me at all."  AR at 982.  *See Lovell v. Colvin*, 137 F.Supp.3d 347, 354 (W.D.N.Y. 2015) (ALJ finding Plaintiff's own expressed desire to work was inconsistent with Plaintiff's claim she was unable to work).

Accordingly, the ALJ did not err in finding Plaintiff's anxiety was not a severe impairment and posed no work restrictions such that the ALJ was not required to account for any such restrictions in formulating Plaintiff's RFC.

Nor did the ALJ violate the so-called "treating physician's rule" by failing to give controlling weigh to the opinion of Dr. O'Connor's opinion of June 2, 2014 limiting

Plaintiff to sedentary, as opposed to light work,[5] as Plaintiff argues.[6]  Plaintiff's

Memorandum at 13-17 (citing AR at 1960).  Under the "treating physician rule," for

disability benefits claims filed, like the instant claim, prior to March 27, 2017, an opinion

from a treating medical source is entitled to controlling weight so long as the "opinion on

the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported

by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] case record...." 20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2). *See Crowell v. Comm'r of Soc. Sec. Admin.*, 705 Fed.

Appx. 34, 35 (2d Cir. 2017) (treating physician's opinion generally entitled to controlling

weight when "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and [ ] not inconsistent with other substantial evidence in the case record.")

(citations omitted).  Where, however, an ALJ discounts a treating physician's opinion,

the ALJ must set forth "good reasons" for doing so. *Burgess v. Astrue*, 537 F.3d 117,

129 (2d Cir. 2008) (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).  The

failure to provide good reasons for rejecting a treating physician's opinion is grounds for

remand. *Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the

Commissioner has not provided 'good reasons' for the weight given to a treating

---

[5] As relevant here, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b). In contrast, "[s]edentary work involves lifting no more than 10 pounds as a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).
[6] Plaintiff's argument challenges the ALJ's determination that Plaintiff was capable of working at an exertional level of "light" as opposed to "sedentary" because if Plaintiff were capable of no more than sedentary work, Rule 201.06 dictates a finding of "disabled" even under the age category of "advanced age," *i.e.*, over age 55, like Plaintiff.  20 C.F.P. Subpart P, Part 404, App. 2, § 201.00(f).

physician opinion and we will continue remanding when we encounter opinions from ALJ's [*sic*] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").  The opinion of a treating physician is entitled to significant weight where it is supported by medical evidence in the record, and to controlling weight where it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Nevertheless, treating physician opinions are not determinative and are granted controlling weight only when they are not inconsistent with other controlling evidence, 20 C.F.R. §§ 404.1527(d), 316.927(d); *Halloran*, 362 F.3d at 32 (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)), "'and the report of a consultative physician may constitute such evidence.'" *Camille*, 652 Fed.Appx. at 28 (quoting *Mongeur*, 722 F.2d at 1039).  In giving a treating physician's opinion less than controlling weight, however, the ALJ is to consider the four so-called "*Burgess* factors," *i.e.*, "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (citing *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)).

Here, nothing in the record indicates Dr. O'Connor is a specialist with regard to any of Plaintiff's claimed impairments, and the ALJ specifically considered that Dr. O'Connor was Plaintiff's "treating medical provider," AR at 23, as well as that Dr. O'Connor's opinion was not supported by medical evidence and was inconsistent with the remaining medical evidence.  AR at 23-24.  The ALJ particularly found Dr. O'Connor

"opined in numerous treatment notes, before, during, and after the closed disability period that [Plaintiff] has a 100% temporary impairment," AR at 23 (citing AR at 1176, 1179, 1185, 1188, 1191, 1194, 1197, 1772, 1775, and 1784).  That Dr. O'Connor continued to find Plaintiff 100% disabled outside the closed period of September 1, 2014 to November 1, 2016, *see*, *e.g.*, AR at 1189 (June 30, 2014), AR at 1192 (August 6, 2014), and AR at 1177 (December 26, 2013), is inconsistent with Plaintiff's claim. The ALJ considered that Dr. O'Connor's opinion of temporary complete disability was not supported by Dr. O'Connor's own treatment notes which failed to identify the impairment that caused Plaintiff to be temporarily impaired, reflected only moderate pain symptoms, and mild to objective signs of a disabling impairment.  AR at 24.  The ALJ further observed that although Dr. O'Connor completed a report of Plaintiff's functional capabilities/exertional abilities dated June 2, 2014, indicating Plaintiff cannot lift, carry, pull, push, reach overhead or at or below shoulder level, drive a vehicle, or operate machinery, and is limited to sedentary work, AR at 1960, such finding is inconsistent with Dr. O'Connor's additional findings that Plaintiff can constantly sit, stand, walk, kneel, bend, stoop, squat, and perform fine manipulation, *id*., activities consistent with light work.  Accordingly, Dr. O'Connor's opinion limiting Plaintiff to sedentary work is not consistent with the evidence of record such that the ALJ did not err in declining to afford it controlling weight.  *See Crowell*, 705 Fed. Appx. at 35 (no error where ALJ fails to give controlling weight to treating physician's opinion that is inconsistent with substantial evidence in the record).  Nor was the ALJ required to recontact Dr. O'Connor for further clarification on this point as Plaintiff argues.  Plaintiff's Memorandum at 16-17.  Rather, recontacting a medical provider may be required "if the lack of a function-by-function

analysis in a medical source's record creates a gap in the record." *Anthony H. v. Comm'r of Soc. Sec.*, 2021 WL 1175680, at * 3 (W.D.N.Y. Mar. 29, 2021).  In the instant case, however, the record as a whole contains substantial evidence supporting the ALJ's determination that Plaintiff is not disabled such that the ALJ was not required to recontact Dr. O'Connor to fill in any gap in the record.

Toward that end, the ALJ observed that during the relevant closed period, Dr. O'Connor routinely recommended Plaintiff receive only conservative treatment for her neck pain including physical therapy and chiropractic care.  AR at 1175, 1181.  *See Netter v. Astrue*, 272 Fed.Appx. 54, 56 (2d Cir. 2008) (upholding district court's reliance on treating physician's "conservative treatment regimen" as evidence supporting the ALJ's determination that the plaintiff was not disabled).  The ALJ also considered Plaintiff's subjective statements, made in reports in connection with her disability benefits application, as well as in testimony at the administrative hearing, that Plaintiff remained capable of gardening with some difficulty caused by wrist pain, and could sometimes exercise, AR at 23 (referencing AR at 1175, 1292, 1320, 1321), as well as that Plaintiff testified she was unable to walk and care for her dog, but treatment notes dated April 6, 2016 state that Plaintiff believed her right wrist pain "may be due to overuse from walking the dog."  AR at 23 (referencing AR at 979 and 1254).  The ALJ further considered Plaintiff's self-reported statements regarding her abilities on the Function Report – Adult, AR at 1132-39, completed in support of Plaintiff's disability benefits application, in which Plaintiff reported she could wash dishes, load the dishwasher, dust, do laundry, drive, set the table, and tend to personal care including

grooming, dressing, and bathing, shop and socialize.  AR at 23 (referencing AR at 1132-39).

Moreover, the ALJ considered the opinions of Dr. Shankman, an orthopedic surgeon performed several examinations of Plaintiff, most recently on March 14, 2014. AR at 1206-10.  At that time, Dr. Shankman reported treating Plaintiff since May 23, 2013 for Plaintiff's cervical spine injury sustained on August 30, 2010, when Plaintiff last drove the bus.  AR at 1206.  Dr. Shankman reported Plaintiff with some decreased range of motion in her cervical spine, but Plaintiff was able to shoulder shrug without difficulty, had no abnormal reflexes, good sensation to light touch and pinprick, and no heat, redness, swelling, or other palpable abnormalities or deformities were noted.  AR at 1208.  Dr. Shankman diagnosed degenerative disc disease of the cervical spine for which no further treatment was expected to benefit Plaintiff.  *Id*.  At that time, Plaintiff was currently working at full duty and without restrictions, Plaintiff was, contrary to Dr. O'Connor's opinion, capable of driving a car without restrictions, wore no brace, used no assistive devise, and spent her day working, performing household chores, running errands, and tending to personal hygiene.  AR at 1209-10.  Although this opinion predates Plaintiff's asserted closed period of disability by six months, the ALJ gave it only partial weight.  Nevertheless, that Plaintiff was then working full time, and Dr. Shankman did not expect Plaintiff to improve, is inconsistent with the fact that Plaintiff seeks only a closed period of disability to November 1, 2016, and suggests Plaintiff remained capable of working throughout the asserted closed period.

To summarize, in the instant case, the evidence in the record establishes at most that it is susceptible to more than one rational interpretation, including the ALJ's

Decision that Plaintiff is not disabled under the Act. *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *Bonet ex rel. T.B.*, 523 Fed.Appx. at 58-59 ("Under this 'very deferential standard of review [applicable to actions challenging an administrative decision on a disability benefits claim],' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" (quoting *Brault*, 683 F.3d at 448  (italics in original).  Further, the Supreme Court recently reaffirmed that the threshold for substantial evidence "is not high . . . .  It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, __ U.S. __; 139 S.Ct. 1148, 1154 (2019) (internal citation and quotation marks omitted).  Indeed, as noted, *see* Discussion, *supra*, at 7, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59 (quoting *Brault*, 683 F.3d at 448) (italics in original).  In the instant case, the ALJ's decision that Plaintiff could perform a limited range of light work, including her PRW as a real estate agent such that Plaintiff was not disabled, is supported by substantial evidence in the record.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff's Motion (Dkt. 10) is DENIED; Defendant's

Motion (Dkt. 11) is GRANTED.  The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      January 4th, 2022
                 Buffalo, New York